UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHELIA MELSON                              CIVIL ACTION

VERSUS                                     NO: 08-3683

LARRY CHETOFIELD                           SECTION: R(3)


**ORDER**

Before the Court is defendant Larry Chedotal's 12(b)(6) Motion to Dismiss for Failure to State a Claim. The Court GRANTS defendant's Motion for the following reasons.

**I.  Background**

Shelia Melson was employed by Restlawn Park & Mausoleum, Inc. She alleges that, during her employment, she was subjected to disability discrimination by Larry Chedotal, the company's president.  Ms. Melson's Brief describes two incidents:

> Mr. Chedotal while training me threw a BINDER at me asking me to place training papers inside of them...then he [] said in a hostile tone FIX IT. Secondly he asks

> did we have any question about anything relative to the sales training. I...wanted to get his opinion on some ideas I had in mind. In return Mr. Larry answering me by SHOUTING IN A LOUD VOICE if I try and use a different approach in recruiting customers he FIRE me.

In addition, Ms. Melson's Complaint alleges that the following incident took place in front of Ms. Melson's co-workers:

> Mr. Larry...would say Shelia [Melson] would need two plots to be burial in instead of one for normal people. Then he would include his grounds Manager Mr. Donald in the training class asking him, to tell her how wide, or how many plots she will need. But Mr. Donald refused to comment or give him an answer.

Ms. Melson resigned from Restlawn soon after this incident. She filed a charge of discrimination with the Equal Employment Opportunity Commission, and received a right-to-sue letter dated April 29, 2008. On May 29, 2008, Ms. Melson applied to proceed *in forma pauperis* with the Eastern District of Louisiana, and Magistrate Judge Knowles denied her application on June 12, 2008. Ms. Melson moved for reconsideration of this denial on July 16, 2008, and Magistrate Knowles granted this motion on July 23. The same day, Ms. Melson's Motion to Appoint Counsel was referred to Magistrate Knowles. The Magistrate denied this Motion on August

25, 2008. On November 19, 2008, Ms. Melson filed a complaint in the Eastern District, asserting a hostile work environment claim under the Americans with Disabilities Act against Larry Chedotal. Mr. Chedotal now moves to dismiss plaintiff's complaint on several grounds. The Court dismisses Ms. Melson case because she fails to state a claim under the ADA.

**II. Legal Standard**

In considering a motion to dismiss, a court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (quotation marks, citations, and footnote omitted).

**III. Analysis**

Mr. Chedotal argues that Ms. Melson's Complaint should be dismissed because it is untimely, brought against the wrong

defendant, and fails to state a claim.

### *i. Timeliness*

Mr. Chedotal first moves to dismiss Ms. Melson's claim as untimely. Ms. Melson had 90-days from the receipt of her EEOC right-to-sue letter to file a civil action. *See* 42 U.S.C. § 2000e-5(f)(1). Her Complaint was not filed until more than 100 days after the expiration of the 90-day period. (R. Doc. 12.) Ms. Melson's November 19th Complaint was preceded, however, by several filings that could be construed as a Complaint, and the Court considers whether these earlier documents were enough to commence this case within the statutory deadline.

The EEOC mailed Ms. Melson a right-to-sue letter on April 29, 2008. (R. Doc. 8.) Because the record does not provide a date of receipt, the Court presumes that Ms. Melson received the letter on May 2, 2008. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1 (1984) (holding that presumed date of receipt of the right-to-sue letter was three days after mailing); *Martin v. Alamo Community College District*, 353 F.3d 409, 411 (5th Cir. 2003) (applying presumption that right-to-sue letter was received three days after mailing). On May 29, 2008, Ms. Melson filed an application to proceed *in forma pauperis*. (R. Doc. 1.) This was denied on June 12, 2008, (R. Doc. 2), but a motion for reconsideration was filed on July 16, 2008, (R. Doc.

3), and granted on July 23rd. (R. Doc. 4.) The same day, the court ordered Ms. Melson to file a copy of the EEOC right-to-sue letter as well as a "statement explaining the basis of her complaint" by August 14, 2008. (R. Doc. 4.) She complied on August 11, 2008, sending a copy of the EEOC letter and a letter describing her claim. (R. Doc. 8.) Although this letter was filed more than 90-days after she received her right-to-sue letter, the Court tolls the statutory period while motions to proceed *in forma pauperis* were pending. *See Baldwin*, 466 U.S. at 151; *Ynclan v. Department of Air Force*, 943 F.2d 1388, 1393 (5th Cir. 1991). Ms. Melson filed two such motions. The first was pending for fourteen days, and the second was granted eight days after it was filed. After deducting this period, Ms. Melson's August 11 letter is considered to have been filed 83 days after her receipt of the right-to-sue letter, and within the filing period.

Ms. Melson's letter to the Court combined with her right-to-sue letter provides sufficient notice of the nature of her claims to relief. While the Supreme Court has stated that filing a right-to-sue letter alone does not commence an action within the 90-day statutory period, the Court left open whether a letter, such as Ms. Melson's, is sufficient. *Baldwin*, 466 U.S. at 149-50. Because the Court dismisses Ms. Melson's claims on other

5

grounds, the Court assumes, for the sake of argument, that Ms. Melson's August 11 letter commenced her claim within the 90-day period.

### *ii. Chedotal's Personal Liability*

Ms. Melson has named Larry Chedotal as the sole defendant in this lawsuit. She has not named her employer Restlawn Park & Mausoleum, Inc. The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual" in enumerated circumstances. 42 U.S.C. § 12112(a). "Covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* at § 12111(2).

The ADA's definition of "employer" closely resembles the one in Title VII and the Rehabilitation Act, and the Fifth Circuit has held that neither of these statutes allow individual liability. *See Ackel v. Nat'l Commc'ns Inc.*, 339 F.3d 376, 382 n. 1 (5th Cir. 2003)("Individuals are not liable under Title VII in either their individual or official capacities."); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)("This Circuit has held that there is no individual liability for employees under Title VII.") *See also Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999)(no recovery against individuals under the Rehabilitation Act). For example, in *Indest v. Freeman*

6

*Decorating, Inc*., 164 F.3d 258, 262 (5th Cir. 1999), the Fifth Circuit explained that "[w]hile Title VII defines the term employer to include 'any agent' of an employer, 42 U.S.C. § 2000e(b), this circuit does not interpret the statute as imposing individual liability for such a claim. Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate *respondeat superior* liability into Title VII." *Id.* (citations omitted). Because the Fifth Circuit interprets the ADA consistently with these Acts, *see Pinkerton v. Spellings*, 529 F.3d 513, 517 (5th Cir. 2008)(Rehabilitation Act) *and Flowers v. Southern Regional Phys. Serv., Inc.*, 247 F.3d 229, 233-34 (5th Cir. 2001)(Title VII), it follows that Ms. Melson cannot state a claim against Chedotal in his individual capacity under the ADA. *See, e.g., Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1038 (9th Cir. 2006); *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 177 (3d. Cir. 2002); *Sullivan River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-80 (7th Cir. 1995)(all finding no individual liability under the ADA). This does not prevent Ms. Melson from stating a claim against Chedotal in his official capacity,

however, and a suit against an employee in his official capacity is treated as a suit directly against the employer. *See Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990).[1] The Court therefore proceeds as if Ms. Melson brought this suit directly against Restlawn.

### *iii. Hostile Work Environment*

Ms. Melson alleges that she was harassed because of her disability, and that this harassment created a hostile work environment. To state a claim under the ADA, Ms. Melson must allege a physical or mental impairment that substantially limits one or more of her major life activities. 42 U.S.C. § 12102(2)(A); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189-90 (5th Cir. 1996). The ADA does not define "major life activities," but the EEOC regulations "provide significant guidance." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995). The regulations state that major life activities include "caring for oneself, performing manual tasks,

---

[1] Chedotal correctly points out that Ms. Melson's complaint does not state that she is suing him in his official capacity. When a plaintiff does not specify whether she is suing a defendant in his official or individual capacity, the defendant's official capacity is presumed. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999); *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989). Because Ms. Chedotal is proceeding *pro se*, the Court construes her complaint liberally to achieve this result. *See Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir. 1994).

8

walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). Although Ms. Melson does not name her physical impairment, it is clear from Mr. Chedotal's alleged comments that Ms. Melson claims to be obese. "[I]n rare circumstances" obesity can be a disabling impairment, *see* 29 C.F.R. pt. 1630 app. § 1630.2(j), and Ms. Melson indicates in her Opposition that her obesity limits her breathing. Because breathing is a major life activity, *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 36 (5th Cir. 1996)(*citing* 29 C.F.R. § 1630.2(i)), the Court considers the other elements of Ms. Melson's hostile work environment claim.

The Fifth Circuit has interpreted the ADA to prohibit disability-based workplace harassment. *Flowers v. Southern Regional Phys. Serv., Inc.*, 247 F.3d 229 (5th Cir. 2001). To recover, Ms. Melson must show that disability-based harassment affected a term, condition, or privilege of her employment. *Id.* at 235-36). This is a hard standard to meet. *See Gowesky v. Singing River Hosp'l Sys.*, 321 F.3d 503, 509 (5th Cir. 2003)(describing standard as "high"). The harassment must be offensive to Ms. Melson, but also to a reasonable person, considering all of the circumstances. *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007)(*citing Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993)). Several

factors are important in this analysis. The Court weighs the frequency and severity of any discriminatory conduct, and whether the conduct is physically threatening or humiliating (as opposed to just offensive). *Id.* The Court also examines whether Mr. Chedotal's conduct interfered with Ms. Melson's work performance. *Id.*

Ms. Melson can state a hostile work environment claim in two ways: by showing that a single, egregious incident altered the terms and conditions of her employment; or by showing several harassing incidents that are not severe, but are still pervasive enough to create a hostile work environment. *Lauderdale v. Texas Dept. of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007).

The Court first considers whether any of Ms. Melson's allegations on its own is sufficient to create a hostile work environment. While a single or an isolated incident can give rise to an ADA claim if it is severe enough, *see Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434-35 (5th Cir. 2005)(Title VII), these claims are rare and usually involve physical violence. *See, e.g., Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998)(holding that a single incident of physically threatening and humiliating conduct can be sufficient to create a hostile work environment for a sexual harassment claim); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d

Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for the purposes of Title VII liability."). *See also Mathirampuzha v. Potter*, 548 F.3d 70, 78-79 (2d. Cir. 2008)("[W]e require that [a single] incident constitute an 'intolerable alteration' of the plaintiff's working conditions" to state a hostile work environment claim.).

Ms. Melson alleges two incidents in her Brief, and one in her Complaint. Only one of these incidents, a crass joke about Ms. Melson's size, is explicitly linked to her disability. The Court considers this incident first. "[D]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a [] hostile work environment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347-48 (5th Cir. 2007)(internal quotations and citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)," however, are not enough. *Id.* The ADA, like Title VII, "is not a general civility code for the American workplace." *Indest. v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1090)(describing Title VII).

Mr. Chedotal's comment that Ms. Melson "would need two

plots" to be buried in is certainly inappropriate. But for better or worse, the ADA requires that employees put up with more. *See, e.g., See Casper v. Gunite Corp.*, 221 F.3d 1338, at *2 (7th Cir. 2000)(unpublished)(referring to mentally disabled plaintiff as "rick retardo" and "dumb ass" not sufficient to create hostile work environment"); *Adams v. B&B Restaurants, Inc.*, 2008 WL 4155458, at *4 (S.D.Tex. 9/4/08)(no hostile work environment resulting from single incident where employee "got close in [plaintiff's] face and said 'Fuck you' three times,'" and then "yelled on the phone to her supervisor, 'Get this nigger bitch out of my store.'"). In the context of Title VII, the Supreme Court has stated that the utterance of a racial slur or epithet does not create a hostile work environment. *Harris*, 510 U.S. at 221. *See also Hayatdavoudi v. Univ. of Louisiana Sys. Bd.*, 240 F.3d 1073, at *7 (5th Cir. 2000)(unpublished)("Assuming...that[] 'dog in the desert' comment was motivated by racial animus, that comment alone does not rise to a level sufficiently severe to support a title VII claim"); *Harilall v. Univ. Health Sys. Development*, 174 F.3d 197, at *4 (5th Cir. 1999)("Wetback" and "illegal alien" comments insufficient to create work environment hostile to national origin); *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 329-330 (5th Cir. 1998)("Buckwheat" and "Porch Monkey" comments insufficient

to create racially hostile work environment).  At best, Mr. Chedotal's insult was the disability equivalent of a racial epithet or slur, and this is not enough to state a claim.  *Id.*

Mr. Chedotal's threat to fire Ms. Melson and other conduct are even less questionable.  If a racial slur is not actionable under Title VII, then comments that are not implicitly or explicitly connected to plaintiff's disability are not actionable either, regardless of whether Mr. Chedotal screamed them.  *Cf. Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998)("A plaintiff...must show that implicit or explicit in the sexual context is the message that the plaintiff is incompetent because of her sex").  Neither is Ms. Melson's allegation that Mr. Chedotal threw a binder at her enough to create a hostile work environment.  Like her allegation that Mr. Chedotal threatened to fire her, Ms. Melson makes no effort to tie this incident temporally or circumstantially to incidents of disability discrimination.  Further, Ms. Melson's Brief does not claim that she was struck or physically threatened, and the Fifth Circuit has dismissed hostile work environment claims involving assaults and *actual* physical *contact* more serious than the allegations here.  *See Hockman v. Westward Commun'n, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)(no hostile work environment where co-worker slapped plaintiff on behind with newspaper, grabbed or

brushed plaintiff's breasts and behind, and held plaintiff's cheeks while trying to kiss plaintiff); *Derouen v. Carquest Auto Parts*, 275 F.3d 42 (5th Cir. 2001)(no hostile work environment where "co-worker attempted to grab [plaintiff's] breasts and later put his hand on and rubbed her thigh"). *See also Mathirampuzha*, 548 F.3d at 78-79 (holding that a physical altercation where co-worker "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye" was not severe enough to create hostile work environment under Title VII).

Although none of Ms. Melson's alleged incidents of discrimination alone is severe enough to state an ADA claim, Ms. Melson may state a hostile work environment claim by showing that "frequent incidents of harassment, though not severe, [] reach the level of 'pervasive.'" *Lauderdale*, 512 F.3d at 163.  When harassment is frequent, less severe incidents can become actionable in the aggregate. *Id.*  *Flowers v. Southern Regional Phys. Services*, 247 F.3d 229 (5th Cir. 2001), is one such case. After learning that the plaintiff had HIV, her supervisor and co-workers started eavesdropping on her phone conversations, refused to shake hands or socialize with her, and would generally avoid her in the workplace.  *Id*. at 236-37.  Her employer required her to undergo frequent drug testing, gave her negative performance

14

reviews, and initiated disciplinary action which led to her eventual discharge.  *Id.*  On one occasion, the company's president called her a "bitch," and said that he was "tired of her crap."  *Id.*  Though none of these events was particularly severe, the Fifth Circuit held that these incidents, taken together, were enough to support the jury's hostile work environment verdict.

Ms. Melson, by contrast, has not alleged protracted discrimination.  She has alleged only three incidents, two of which she fails to connect to her disability.  The Fifth Circuit has dismissed hostile work environment claims based on conduct more severe and more frequent.  Again, the Court finds the Fifth Circuit's Title VII cases persuasive.  In *Hockman v. Westward Communications LLC*, 407 F.3d 317 (5th Cir. 2004), the plaintiff alleged the following series of incidents: a co-worker slapped plaintiff on the behind with a newspaper, grabbed or brushed against plaintiff's breasts and behind several times, and held her face while trying to kiss her on another occasion.  In *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 871-75 (5th Cir. 1999), the plaintiff's co-worker made several inappropriate comments, including "your elbows are the same color as your nipples," and "you have big thighs."  The co-worker also touched plaintiff on several occasions, simulated looking under

15

her dress, looked down her clothing, and one time patted his lap and said "here's your seat." In both cases, the Fifth Circuit held that these repeated occurrences were not enough to establish a hostile work environment. *See also Mosley v. Marion County*, 111 Fed. Appx. 726, 728 (5th Cir. 2004)(per curiam)(holding three incidents involving racial slurs was insufficient to support hostile work environment claim); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001)(finding that the plaintiffs could not establish severe or pervasive harassment based on eight incidents of alleged racial harassment during a two-year period). Ms. Melson's allegations are no more severe or pervasive than those brought by the unsuccessful plaintiffs in *Shepherd* and *Hockman*.

## IV. Conclusion

For the reasons, stated above, defendant's Motion is GRANTED and plaintiff's claim is DISMISSED.

New Orleans, Louisiana, this 4th day of March, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE